Good morning, Your Honor. May it please the Court, I would like to reserve four minutes for rebuttal. Four. Thank you. Your Honor, this case is about Mr. Green's futile efforts to return to his job at Bakemark while he recuperated from cancer surgery. Mr. Green's efforts were futile because Bakemark maintained a policy that prevented employees from returning from a medical leave unless and until they were 100 percent healed. In other words- Where is the evidence that that was a policy? It seemed to me that it, I mean, the evidence suggested that it had to do with the nature of the job that Mr. Green had, not that it was a blanket policy. There were vague references to an individual, I think, who had a broken foot and they were allowed to put their leg up, and somebody else who had some eye issues and they allowed her to either turn- The same rule would not be appropriate for all employees. Wouldn't it depend on the nature of the employee's responsibilities? Well, it seemed to be, in terms of the hours that one worked, there seemed to be a blanket rule. No one, they could not cite a single example of any individual who was ever permitted to return to work pursuant to a modified work schedule. However, there is direct evidence, certainly probative evidence, of a blanket policy, and that's Mr. Witzel's testimony, the regional manager, who testified unequivocally that during the years that Mr. Green worked, there was a policy in effect that you could not return to work with any restrictions, no conditions, no qualifications. That was his testimony. He repeated it twice. The district court acknowledged that testimony, but for all intents and purposes ignored it, gave it no weight whatsoever, and rather credited what I would consider to be a very vague, as I said, and conclusory language about people coming in with accommodations. Well, is your lawsuit about this policy, or is your lawsuit about Mr. Green? It's about Mr. Green, but as we know, this court has said a per se rule, let's just write that, a 100% healed rule is a per se violation of the ADA, because it dispenses totally with the purpose. Does that matter if it was permissible for the company to say full-time work was an essential function of the job? In other words, if it's permissible for the company to say, listen, it's an essential function of the job, you work 40 hours, that's just what we're doing when it comes to you. If they can do that, does this other policy matter? I think it does matter. I think it does not dispense, even if they had such a rule, all jobs are contemplated to be full-time, presumably, otherwise they give them a part-time job. There are categories of employees. I agree. But I believe there's no rule, certainly in the statute contemplated, or in the regulations, or even in the case law that says full-time employees are exempt from the provisions of the in each individual case, whether the requested accommodation is reasonable. I agree. And this case is rife with questions of fact with respect to whether or not Mr. Setting aside the 100% One person actually said you could do this. One person said eight hours is not a requirement of the job. Correct. Mr. Witzel again, same gentleman who testified about that. Operations manager doesn't have to work eight hours a day? It is unclear. Perhaps an operations manager doesn't have to work any days, because for a period of time while Mr. Green was out, there were times, days, perhaps even weeks, where no supervisor was in the warehouse. So it's counterintuitive to argue on the one hand, he needs to be there, it's an essential function, and we're suffering an undue hardship by accommodating him. You're making the point that when they flew people in, they weren't flying people in every week for 40 hours a week? So there were times there was no one in that position? Is that the point you're making? That therefore it proves it was an essential function when he did retire? I think it makes it an issue of fact. I'm not saying it proves it. But somebody also gave you some positive testimony, right, that said it's not a requirement. That's correct. And some of the work he did was at home, right? He could not necessarily do his job, but again, he never asked for a permanent accommodation. He asked for a period of time to recuperate or build up his strength by coming part-time to work. Is that what he told the Social Security Administration, that he just wanted part-time, that he was recovering, and that therefore they awarded him disability benefits? The Social Security application was well after the fact. That was after he had already been terminated. You're talking about February now, right? No. Well, he started asking for accommodations in February. The Social Security application No, no. I'm sorry. Okay. There were three different alleged failures. Correct. We're talking about the first one. The first one is in February. That's what we're talking about now, right? The one in March. Okay. And then again in June. Okay. And the Social Security claim didn't happen until after this. Oh, correct. Yes, after he was actually terminated. We're talking about the February claim now, right? So... In that instance... Now, was he paid the same... They gave him a different accommodation. They basically said, we'll give you another month. Their accommodation was solely... With one exception, we can talk about that. It was, we will give you a leave of absence. Okay. So... Unpaid. It was unpaid? Unpaid. Okay. So he was basically still collecting disability. Correct. Which was a fraction of the salary. If he had been accommodated, would he have received more money? Well, that's an interesting question. Obliquely, there's some allusion to the fact, well, why should we have to pay somebody who's not doing full-time work? Well, the answer probably is, you don't. If you engage in an interactive process with Mr. Green, which never happened, in which they offered him the opportunity, okay, if you're going to come back and work four hours a day or only eight hours a day for a period of time, we're going to adjust your pay accordingly. That never happened. Mr. Green was never offered that opportunity. So what was the... What are his damages for that failure to accommodate in February? I would say it is absolutely an issue of fact, because we don't know ultimately the extent to which his failure to be accommodated contributed to his inability ultimately to work. Again, the doctor was trying to get him back to work as early as February. Again, in March. Again, in June. And all along, they said, no, no, no. And ultimately, as we know, he collapsed and he had some difficulties thereafter and ultimately to the point where the doctors were diagnosing him with PTSD. So whether or not that was a result of the inability, the refusal of the company to accommodate him or some other reason is a matter of fact. So, and you're not facing any claim on his having to work 24 hours that day? No, no, no. We're not saying because he worked that day. There was an argument that there was some retaliation, but that's not the central argument. The central argument is this man was attempting for this period of time to return to work. He wasn't asking for permanent restrictions. He wasn't, in fact, he was giving them a definite schedule for a limited period of time. And there's absolutely no evidence on the record that that would impose a hardship on the company. And how did they fail to accommodate him in March? Once again, it was, they did accommodate him for one week. I concede that. But that accommodation was, I would say, not a material deviation from their 100% rule. They imposed on him a one-week deal, said you have to be back at work by March 30th. He wanted, his doctor wanted to have more flexible hours. They said, well, we need to know how many, how many. So he, Mr. Green, went to his doctor and said, I want it. I got to get back to work. So the doctor wrote him, okay, visit these, this accommodation will last only for one week from, I think, March. Okay, but I don't, what accommodation did he ask for in March that he wasn't given? Limited hours, eight hours a day, five days a week. Okay, when did he ask for that? That was in March. Can I, I'd like to know, I'd like you to identify a specific request in the record and then a specific denial of that request. Well, what happened was he, he asked for it. The doctor wrote a letter in March. They came back and said, well, you don't have a time period for this, for this period. He then went to his doctor and said, look, they told me I have to be back, but they'll only extend it to March 30th. I would need to go back. I want to go back to work. So the doctor agreed and said, okay, he can return with no restrictions. So Mr. Green returned. He worked then from March 30th, I believe, until May 2nd. Wait, but I don't hear a request that was denied. No, I'm saying they did, no, I'm saying in March, they did, they acceded to his, to his request for that limited period. But it was the company who established the period in which he would have to be back. That was not discussed in any interactive process. He said, here, my doctor says eight hours a day, five days a week with no time period. They said, well, how long? We need you back by March 30th. So he went to his doctor and said, doc, can you get me back to work? He had no obligation to say, to get something to the doctor that said that March 30th won't work? He was afraid to. He didn't. And I concede that. But I don't concede that they willingly engaged or meaningfully engaged in an interactive process or meaningfully deviated from their 100% rule. They were persistent in enforcing that rule. Remember, in February, there was no conversation at all. Mr. Green submitted a request for four hours a day, five days a week for, I think, up to 30 days. That information was communicated to the company. The company made an internal decision, a discussion among their officials, and then told Mr. Green, no, you're on a leave of absence. When was that request for the... That was February. No, not that. When did the employer ask him to meet? That was in June. That's June. That was in June. Actually, June and July. Your time is up. Thank you. May it please the court. February claim fails for two related reasons. First, Mr. Green failed to satisfy his burden of showing that his only proposed accommodation was a reasonable one. He presented no evidence he could perform his operations manager's job while working less than half a regular schedule. Instead of evidence, he presents the argument that it's enough that he could do all parts of his job, but only for four hours a day. But that argument makes little sense. By Mr. Green's logic, it would be equally reasonable to come back for three hours a day or two hours a day or one hour a day. He provides no legal authority that those are reasonable. Isn't there testimony that eight hours a day is not a requirement of the job? Actually, the record shows Mr. Green's own declaration says that when he was hired, he was told it would be eight or nine hours a day. There is direct evidence testimony in the record that says four hours a day is certainly not enough to perform the essential functions of the job. I think, Your Honor, what you may be referring to is some testimony that said that there was no particular hour requirement. But that's in the context, Your Honor, of saying there's no particular hour requirement because he has to work as long as it takes to get the job done. And the evidence was overwhelming that what it takes to get the job done was 10 to 12 hours a day. And what about what happened in his absence? In his absence? Well, in his absence, in this case, often relief managers had to be flown in, which, by the way, is not something the company is obligated to do since the law is quite clear that you don't have to have other employees to pick up the slack. But other employees did pick up the slack because, Your Honor, in this case, despite the plaintiff's characterization, the most distinguishing facts in this case are that What if there were times where these flown-in people weren't there and the company was still functioning? I think that's the point they're making. There may have been times. There's no evidence, actually, that there wasn't. They point to an absence of evidence that there were people there 40 hours a week. But there's no evidence, actually, that there were gaps in time. But even if there were gaps in time, that doesn't make four hours a day, this part-time schedule for 30 days, reasonable. For example, there's no evidence that there were other part-time managers. There was no evidence that anybody else had been given this kind of schedule. There's no evidence that anybody else had this sort of work-hardening program that he seemed to think he's entitled to. And his argument about, well, he wasn't replaced for months at a time. So that seems to be What about the interactive process argument? Yeah, they're clearly, for example, well, in February, his doctor said he could only work four hours a day. So an interactive process is not required, actually, under the law unless there's been a proposed reasonable accommodation. There's no trigger of any obligation. But in this case, Baikonur actually did propose another accommodation, gave him another accommodation. So in February, not only was the accommodation he proposed, he's not shown that it was reasonable, but he was given another accommodation that was reasonable. Okay. So you're saying that whenever a job is a 40-hour-a-week job, there's no duty to accommodate with respect to hours? Well, first, I would point to this court's en banc holding in EEOC versus Ford Motor. And this court certainly took a strong position that a full-time job is a full-time job. Now, there may be It would really depend on what the employer's needs are and the particular position that the employee occupies. But certainly in Ford Motor Company, we did, I guess it is probably, I guess the best way to characterize it is we were supportive of the notion that there can be full-time jobs that are absolutely full-time jobs, and they cannot be gone. And it required physical presence. Exactly right. And so, and I would also say that in addition to the job, there ought to at least have been some evidence that Baikonur had part-time managers somewhere else, anywhere else. There was no such evidence in this case, nothing. But it was a temporary accommodation. It was a temporary accommodation in the sense that he wanted to work part-time for 30 days. Yes, it was a temporary accommodation. I will, I think that this court has addressed a similar situation in the Laube case, and addressed the specific argument that plaintiff seems to be making, which is that somehow Baikonur had some obligation to create a temporary part-time job to help Mr. Green in his recovery. But that misunderstands the ADA, and it misunderstands the law in this circuit. The law requires employers to accommodate a disability by making reasonable changes so that the employee can work in his disabled condition. Employers are obligated to accommodate disabilities. They're not obligated to provide treatment for them. They're not rehab centers, and nothing in the ADA requires them to provide, much less create part-time jobs where there aren't any. You answer the question I asked you. I think you're answering it. You're saying that when a job requires eight hours, there is no duty to accommodate for a lesser time, even if it's for a short duration. There's just no duty to accommodate by changing the hours. There is no blanket duty. That's correct. It would depend on the circumstances. It might depend on what the employer has done in other situations. I'm not going to stand here and say that if a person needs one day off, that that might be reasonable. But that's not this case. In this case, there's no evidence that the plaintiff could do the essential functions of his job in the four hours that he said he had to do it in. There's no evidence that he proposed a reasonable accommodation or that there was one available to him other than leave, given his medical restrictions. Is there anything in the record of what he says about what he could do in those four hours and also some work at home? Well, his argument appears to be that I could do everything, but I could only do it for four hours. I don't recall anything about working at home, but to be a supervisor, and if Ford Motor stands for anything, it's that you have to be at the job for most jobs. You can't just work at home, especially if you interact with other people. Could a jury say, all right, let's look at this. He's been off for a certain period of time, and they have managed by having somebody come in and spend X amount of hours a week. He is proposing that for, how much time did he, in February when he said he could work, how long did he say that would take? About 30 days, Your Honor. Okay, so could a jury say, all right, they had somebody come and do this, was spending 25 hours a week doing it or 20 hours a week doing it. He proposed to do basically the same thing for a month. Is that a reasonable accommodation? Well, actually, the law is pretty clear that you can't, it's not an obligation to have other people come and do your job for you. You're not listening to me, I'm sorry. Well, I think I am because you're saying that he did have other, they did have other people come. I'm saying something else. I'm not saying that they would have to supplement the 20 hours with someone. I'm saying as an evidentiary matter and also with the testimony that there's no particular time period for working. Sure, you have evidence that it takes a lot longer than that, but under the circumstances that they managed to get by with somebody in this position working, I don't know the exact number of hours, but let's say it's 20 hours a week. As an evidentiary matter and as a question of fact, couldn't a reasonable jury conclude that the evidence supports that they could get by another 30 days and it was a reasonable accommodation to say that he would be working according to what he suggested, five days a week, four hours a day for the next 30 days and that the business would have been just fine? First, I would say that I don't think there's any evidence in the record that they only flew people in for 20 hours a week. I don't know. They flew people in. That's what's clear and Mr. Green acknowledged in his testimony that they had to cover for him whenever he was out. The evidentiary record is not exactly clear as to who was there exactly how long or for what days, but he's clear that they had to cover for him. Now, as to whether they get by, well, the law is also quite clear. I think it's, I can't remember the exact name of the case, but the law is quite clear that just because an employer has extended itself and perhaps created some kind of accommodation, it doesn't thereby obligate itself to continue that. That is a different issue that's completely different. It has to do with whether the accommodation is reasonable and if they have found it reasonable to have somebody in that job for X number of hours a week, it may not be their obligation, but it sheds light on what's a reasonable accommodation. I'll say this. Whether they can get by or not is not the legal standard. That's the first thing. It's not the legal standard, Your Honor. And yes, I mean, does anybody think the business fell apart? The business didn't fall apart even though Brian Greene wasn't there for months and months at a time. That doesn't mean it wasn't essential for his position that he be there. The point I'm trying to make is that there's a lack of evidence from the plaintiff who has the burden of showing that he could do the essential functions of his job in four hours a day and there's no such evidence and that there's no obligation to give him some kind of work-hardening program that he seems to think that he's entitled to have. Mr. Greene countered with a Seventh Circuit case called Powell's, but that's, I want to make the point because he only raised it in his reply brief and I haven't had a chance to address it. It's obviously not controlling, particularly in light of Laube, and it doesn't say that a part-time gradual return to work is always required, but only that it might have been reasonable under the facts of that case, and it presented completely different facts that make it inapposite here. He had an accident, and then he was suspiciously told he was fired because he couldn't do his job, even though the only thing that he couldn't do after his accident was something he already wasn't doing before his accident. There's no other discussion of essential functions in the case, nothing to indicate that his full-time attendance was essential or that he could not otherwise perform. Were there depositions taken of the people that were flown in, in terms of how long they worked? There were depositions taken. So what did they show in terms of, did they come in on a Monday and work Monday morning through left at the end of the day Wednesday? There's just not that kind of detail in the depositions that I recall, Your Honor. Your understanding of the depositions of the people that were flown in is they were flown in. They were flown in to do his work, but the record's silent as to whether they worked 40 hours that week, 20, or 70. This is kind of a supplement. I'm sorry. I didn't mean to interrupt and prevent you in any way from answering Judge Sutton's question, but can you also tell us, if they weren't asking any of these things, what in fact was the purpose of the depositions? That might be the harder question. I can't answer that. I can say that the general... Who deposed him? Mr. Mezboth did the depositions, I believe. I was not there for that. The general answer to your question is the plaintiff conceded that whenever he was out, arrangements had to be made to cover for him. Did Steve Wilson testify that working more than eight hours a day, five days a week, is not an essential function of the job? I don't recall him speaking in those words, Your Honor. I'm not saying he didn't, but I think that what he was saying was it's as long as it takes to get the job done. The plaintiff conceded he was told it took eight to nine hours a day. The evidence shows it was 10 to 12, and there was direct evidence that it took more than four. I am running out of time, so if I could quickly move to the other periods of time. We'll cover March by simply saying that he worked within the medical restrictions that he had. There's no evidence that... And if Mr. Green's doctor was willing to give into his influence, there's no evidence that Bakebark knew that was what happened, and no evidence that it wasn't entitled to rely on the doctor's note that it had. And it's vindicated by the fact that he continued to work all through April until he collapsed in May. So let's talk about... Yes, let's talk about the summer, because the summer shows that Mr. Green twice admitted in the district court that he was unable to work in any capacity since May 2, 2012. First, he did it in his deposition. Now, he says he didn't understand the question, but there's no evidence in the record from Mr. Green he didn't understand the question. And frankly, he asked a clarifying question and then answered that, yes, he was unable to work in any capacity after May 2. Maybe you could sum up in kind of a sentence of the overall position, because you're about to run out of time. I agree with that. I do want to make one point that wasn't brought out clearly in my brief, though, Your Honor. Mr. Green's admissions are even more clearly reinforced by the evidence that he actually gave Bakemark at the September discussion that he cited to the district court and this court. He gave two doctor's notes, two different doctors, submitted statements that he should never come back to Bakemark as a result of the trauma he endured there, which they say culminated on May 2, 2012. Now, these are statements in September 2012, and the last event that they describe as precluding Mr. Green from coming back occurred on May 2, a time when he was working with no medical restrictions. So it's not possible that Bakemark's failure to accommodate him somehow caused his inability to return to Bakemark after May 2, because there were no accommodations on May 2. He was working without restrictions. Thank you. Thank you, Your Honor. Your Honor, several points. Counsel states, well, there's no evidence that anyone else worked part-time. There's no evidence that anyone else had their hours reduced. Of course there was no evidence of that, because there was a 100 percent healed rule. So what happened to the people that were flown in? The deposition? In answer to that question, yes, I took the deposition of Mr. Whitson. So what did they show about how long they worked? I asked him specifically, how many times did you come in? And his best testimony was, well, I came in somewhere between 30 and 60 days, given the point that Mr. Green was... It wasn't just one person, was it? No, he said someone else. But he couldn't tell us how many times, how often. There's no evidence in the record whatsoever. Did you ask, okay, you were there on Monday or part of this week. Did you ask on how many hours each day you worked? I can't tell you right off the top of my head this specific question. But I did ask him how often, with what frequency. You asked how many hours a week. I did ask him the amount of times... Did you ask him if there was coverage the entire time, if he knew that was within his... I asked how often there was coverage, I believe, in terms of how often did you come and who else came. And there was nothing to establish that they did not function for substantial periods of time without a supervisor. Really required to prove that they couldn't function. I mean, I don't know... No. I don't know how that even... We've spent an inordinate amount of time talking about something that, as far as I can tell, has really nothing to do with the case. Well, I think... Well, I do disagree to this extent. I believe the ADA imposes an obligation, and I think the case law imposes an obligation on an employer, once an employee proposes a reasonable accommodation, to demonstrate that there is an undue hardship on the company. No, no, no. The employer has the obligation to make a reasonable accommodation, but the employer does not have to impose... I know of nothing under the ADA that requires the employer to impose undue hardship on itself in making accommodations. I don't think you find that... No, I agree with you. I thought you don't find that language. You don't find it in any case law. But the underlying assumption here is that they needed to be not functioning. Your Honor, I agree that the employer does not have to impose on itself an undue hardship. But what the law requires, I believe, in case precedent, and case precedent established, that part of the analysis of whether a requested accommodation is reasonable is whether it imposes an undue hardship on the company. So let's get the evidence. What is the evidence that it wouldn't be an undue hardship for him to be working basically half time? The evidence is that they functioned for periods of time without Mr. The problem with that, and I think Judge Sutton had a question for you. Go ahead. It sounds like the evidence is not clear, but I'm just trying to understand a legal point. Let's just say the evidence was clear that they flew people in. These people worked a minimum of 45 hours a week. They were there the whole time he was gone. Would that mean you lose the case? Because that's pretty good confirmation. It was an eight to nine hour job. They're flying people in, for gosh sakes. Well, I think it's evidence. I realize that you don't, you challenge the premise of the question, but wouldn't that be a pretty problematic fact? It would be, Your Honor. If that were the case, it would be a problematic fact. Would it be dispositive? No. Why not? Because there's counter evidence that says. No, no, no. I'm asking you to assume they fly people in every day he's gone, and while they're there, they do just what the other evidence shows, work at least eight to nine hours a day. I think that would be strong evidence, but it's not dispositive. Why not? Because there's no requirement. There's nothing in the job description. The testimony was that people came and go, supervisors, as they wanted. They did not, they didn't establish that. There's no evidence of that point. I understand Your Honor's point, but there's counter evidence. Your time is up. One. I would like to know what the evidence in the record is that supports that he could do the, that he could discharge the obligations of the job in that time, or that it would not be a hardship. The evidence that it would not be a hardship is the fact that they went on for so many months, weeks. Are you saying that they had an obligation to fly people in? No, they did not have an obligation to do that, but the evidence is, the question is, would it have posed an undue hardship? He was requesting a reasonable accommodation that did not, that was not permanent and had predictable attendance. Why is that more, to have him come in for those hours, why is that more of a hardship on the company than to have him not there at all? Well, then that's the other question. Do you agree that there's no evidence regarding how often or how many hours the substitutes were? Correct. There is no evidence of that. Thank you. We appreciate the argument both of you have given, and we'll consider the case carefully. I believe the remaining cases are on the brief, so you may adjourn.